Let's start over. We'll give you your six seconds back. All right. Thank you. Fifteen minutes. My name is James Coleman, and I am counsel for Cracker Barrel Old Country Store. And I would like to start by requesting you reserve five minutes of my time for rebuttal. There are five issues I'd like to touch on. Four have been fully briefed in the briefing that concluded in October of last year. The fifth issue pertains to a decision from the U.S. Supreme Court of three weeks ago that was handed down involving burdens of proof under the Fair Labor Standards Act. Cracker Barrel filed a 28-J notice the day after that decision was handed down. And then last week we filed a motion for leave to file a limited supplemental brief that was attached to that motion. That is still pending, and I guess I'll just simply say I'd urge the court to consider granting that motion and considering the arguments that are in that brief and then setting whatever the court deems is appropriate for an appellee brief on that issue. The decision is EMD Sales v. Carrera. It's an FLSA case. The very specific issue involved in it was the proper burden of proof for an employer to prove the outside sales exemption applies. And essentially the Fourth Circuit was reversed because the court determined that the preponderance of the evidence standard is the default standard in American civil litigation, and it is the default standard when it comes to statutory interpretation under the FLSA. The court went through a mode of analysis in first determining the proper default standard and then looking at whether there's either a statutory constitutional or a unique common law warrant that would justify deviating from the default standard. And in that case, the court said there's no such warrant that's applicable to the Fair Labor Standards Act. And what we are asserting, the final element of that decision, and it was unanimous, was that the court reiterated what the court had said in 2018 in the Encino Motor Cars case, and that was that the day of interpreting the Fair Labor Standards Act loosely in favor of employees based on public policy was over and that the statute needed to be given a fair reading when interpreting. And Cracker Barrel is asserting that if the default standard is preponderance of the evidence, that it applies equally to the request of a plaintiff for conditional certification and for issuance of notice to turn an FLSA case into a collective action. And I'll tell you, that doesn't seem like a tight fit to me. There's no application here of a clear and convincing standard, which is what the Supreme Court's decision spoke to, and decisions on a preliminary basis in lots of contexts, preliminary determination that there's jurisdiction to proceed with a case. Certainly in the class context, you don't apply necessarily the same standards you're going to have to to enter judgment in order to deal with preliminary questions. And I'm not sure how the recent decision of the Supreme Court is supposed to undermine our court's decision in Campbell, which we are bound to follow unless it's clearly irreconcilable with Supreme Court subsequent decisions. So that's the standard you have to meet, and I'm not sure how much you want to spend of your time focusing on that. I've got to say, for me, it's a hard sell. I would just briefly, Your Honor, I understand the question. It's debatable whether or not Campbell adopts Lissardi. I think at best, all you can say is- We care less about Lissardi than Campbell, because Campbell's what binds us. Yes, true. But the entire issue ultimately focuses on, are there employees that are similarly situated? And then what does similarly situated mean? And Section 216B, unfortunately, uses the term similarly situated but doesn't go further in terms of defining it. In this case, for example, there's been no discovery. There's almost no factual record developed, yet the court's order that is before this court has authorized court-approved notice to go to over 142,000 individuals. The Lissardi, and to the extent you say Campbell acquiesced to Lissardi, there's almost no- You could use that term. It's not the one I would choose to use, because we are bound by Campbell. Whatever Lissardi said. I understood. I understood. But the confusion on Campbell is an example. The Fifth Circuit, in the Swales decision, the Fifth Circuit believes that Campbell rejected Lissardi, and they state that point blank in their ruling. That's fine. We're bound by Campbell. What you want to argue, too, is that Campbell should point to a different result. You can make that argument. And I would submit that Campbell does not have to be reversed. It doesn't have to be overturned in order for this court to adopt the preponderance of the evidence standard in determining who is similarly situated before notice goes out. Notice under the FLSA is an exceedingly powerful tool. It can change the dynamics of a case dramatically. And for notice to be permitted to go out under the approval of a district court without a rigorous analysis of whether the recipients are, in fact, similarly situated is just solicitation of claims. And the Supreme Court said many years ago in Hoffman-LaRoche that the district courts need to go to great lengths to avoid the solicitation of claims. Can we get, if you don't mind, what for me is the heart of this case, and it relates to the issues that you've started to address. And let me just go right to the heart of it. If we're convinced that Bristol-Myers applies, what's left of this case? If Bristol-Myers, if this court applies Bristol-Myers to this case and to FLSA collective actions, what's left of this case is that any employee that worked for Cracker Barrel at one of its 14 stores in the state of Arizona has valid jurisdiction and the federal court has valid in personam jurisdiction over Cracker Barrel with respect to its employees that worked for the company in Arizona. Doesn't that go to notice? It absolutely would impact notice. I mean, as it stands right now, the court has authorized notice. Cracker Barrel has 14 stores in Arizona. They have 657 nationwide. That's 2%. The court has currently – This is not its principal place of business. I'm sorry? This is neither its headquarters or its principal place of business. That's absolutely correct. The state of Tennessee is where the corporate headquarters is, and the company is organized under the laws of Tennessee. So there is general personal jurisdiction in Tennessee, and then there would be general personal jurisdiction for any employee to sue in the state where they are. And we're dealing with the statute, as I understand it, that does not include a provision allowing nationwide service of process. Absolutely correct, Your Honor. There is no nationwide service of process provisions in the Fair Labor Standards Act. This is a little bit of an interlocutory appeal in the sense, at least to me, with other issues bouncing around. Where are we on whether employees who signed the shrink-wrap, if you will, arbitration agreement, whether they can be permissibly part of this class or not? As the lower court's order currently stands, the very first order the court issued in November of 2021, it's ER page 45 and following, the court found Cracker Barrel's ADR agreement to be fully enforceable and, in fact, dismissed the first complaint in its entirety, and then that was completely superseded with a second. So as we sit here today, that's the law of the case? I don't think it's the law of the case without a court of appeals ruling. As we sit here today, looking at the body of work that the district court did. Yes, yes. But inexplicably, the court later authorized notice to adult signers of the ADR agreement, and that is the overwhelming one. And then the other smaller percentage would be people that missed signing it or may have signed it as a minor and then timely repudiated. Thank you. On the Bristol-Myers Squibb issue, I would just note, and it's all in the briefs, that four sister circuits have applied Bristol-Myers Squibb to FLSA collective actions, and only one circuit, the First Circuit, has looked at that issue and gone in the opposite direction. And obviously we believe the First Circuit got it wrong, and I would just direct the court to the most recent ruling applying Bristol-Myers is from the Seventh Circuit last August, and there is a great analysis in that opinion of what the First Circuit got wrong in reaching the opposite conclusion. But it essentially focuses on Rule 4K1A of the federal rules, which is what you have to look to when you don't have nationwide service of process provisions, and in this case you do not have them under the FLSA. And 4K1A incorporates, if you will, and references state law, and that's how the 14th Amendment comes into play and puts limitations on personal jurisdiction. Okay. Did you wish to reserve your remaining time? Yeah, I think I'm down to three minutes or almost, so I'll reserve for rebuttal from here. All right. Thank you. Thank you. May it please the Court. Nithin Sood on behalf of the Appellees. The procedural background of this case shows that the district court's decision should be affirmed in full, and the issues presented by Cracker Barrel, especially the BMS, personal jurisdiction issue, are not appropriate for interlocutor appeal because it is waived or is judicially stopped from making that argument. And I'm going to kind of get into what appeals to be the two or three main issues raised by the panel, and that was addressed by my friend on the other side. The procedural background is such that when this case was originally filed, we had one Arizona plaintiff, three out-of-state plaintiffs, named plaintiffs, as well as several others who had opted in. At the time Cracker Barrel sought to first respond, they chose to move to compel arbitration. They used Arizona law to find that the arbitration agreement was enforceable, applying it to three out-of-state plaintiffs. And the court agreed with that. So it did not file a 12B2 motion. It did not seek to dismiss any of the 200 opt-in plaintiffs or the three out-of-state named plaintiffs. It waived that argument. In Cannaday and in Waters, that issue became ripe when the defendants did actually file motions to dismiss timely under 12B2. With respect to the arbitrability issue, the court has recognized that there are several disputes as to who is subject to arbitration, and those disputes need to be resolved at the second stage of the Campbell certification process. To try to resolve those disputes pre-certification would essentially be not in compliance with Campbell. It would result in a massive amount of discovery, a massive amount of resolving disputes about who signed the agreement when. Are they avoidable? The definition of minor varies. Let's take the easy one. Suppose we limit ourselves to the people who worked at Arizona, and chances are they were Arizona residents, so I guess there could be a handful that aren't. Do you have any sense of what the breakdown is between the number that might have a claim to be able to disclaim the arbitration agreement because they were minors or for some other reason? We would not know that at this time. I suspect the fraction, I mean, I suspect there are a lot of people who are minors working at Cracker Barrel, but I wouldn't expect it to be an enormous percentage, and it does raise the question if you can sort out a certain large percentage, what's the point of giving notice that will be effectively futile because they're bound by these arbitration agreements? I don't think we can sort it out that easily, and there are two ways to show this. Well, first of all, the notice actually specifically states if you're subject to arbitration, you can't proceed. So if these people get the notice and they read it and it says you're subject to arbitration, if they know they're subject to arbitration, they can disregard it. Part of the problem is are they going to know they're subject to arbitration, but I get your point. And they may not, all right? And in those situations when, let's say somebody submits it in and we find out we have to investigate whether or not they're subject to arbitration. We have minors, current minors. We have adults who signed as minors and we have to evaluate whether they can void them. We have a group of people who would have signed. We have a group of people that flat out didn't sign them. That's an easy one. And we would have a group of people that may have signed them, left employment, came back and did not re-sign. There's two versions of the arbitration agreement, one in 2015 and one in 2019. We've not had an opportunity to challenge the 2019 version. And we still have the right to consider procedural grounds. These are not my clients. I don't have the ability to investigate this issue until they opt in. And this is why I think it will run afoul of Campbell. In the current posture of this case, is the district court assuming that if you have one plaintiff, that notice can go out nationwide and bring in claims? Well, under BMS, sorry, so basically under the statute, the FLSA statute, if we're establishing jurisdiction of a worker here that satisfies the prong and meets specific personal jurisdiction, serves the defendant, then that is the representative or the named plaintiff. And then, therefore, yes, notice can go out. There are 14 Cracker Barrel stores in Arizona. There are lots of employees here. But the notice the district court contemplates went out nationwide, didn't it? Correct. It would go nationwide to all servers. And doesn't that assume that Bristol-Myers doesn't apply? Correct. Because it would be – well, Bristol-Myers does not apply, one, because of the representations made by Cracker Barrel throughout this. So I don't think we even get to that question. But we do get to that question. I want to focus on what we've been raising here. If Arizona stores are 2% of Cracker Barrel stores, then we know or can safely infer that the percentage of people to receive notice who have claims based on Arizona activity is a tiny fraction. And that raises the same question that I was asking before with regard to the arbitration clause, except that we know that it's a small fraction. And what the point of that notice would be, I'm interested in. Now, you're talking about that you allege that they somehow waived that argument. I think we may need to deal with that separately. But if they haven't waived the argument and we would decide that Bristol-Myers applies, I'm struggling with why notice should be given to 98% of the people who aren't eligible to receive in Arizona. Well, if the court makes a determination right now that BMS applies and then anybody who is out of state cannot be part of the lawsuit, then you're correct. We can't get notices out to them. But that's not the posture we're at right now because of the waiver issue, but also with respect to resolving the—I know there's a crossover here because we're talking about resolving the arbitrability issue as well. And so to try to resolve the arbitrability issue would involve a massive investigation up front. And so what— Well, I hear your argument on arbitrability, at least with those who have the Arizona connection. But it seems to me to launch notice and possible investigation for a potentially 98% of the recipients of the notice if we reach the Bristol-Myers issue and decide that if you don't have the contact with Arizona, you can't be included in this lawsuit. Are you acknowledging that if we reach the issue and make that decision with regard to Bristol-Myers, then maybe notice to most of the country is not appropriate? Well, if the court makes that decision that Bristol-Myers applies to this case and that potential opt-ins out of the state cannot join in, then I agree. Then they should not get notice. So why is it we should apply—why is it you argue we should not or cannot apply Bristol-Myers? So for several reasons. One, the plain language of the statute, the FLSA, you just need to establish jurisdiction of the named plaintiff and then anybody else who's similarly situated can opt in. Isn't that exactly what the Supreme Court of California said, that Bristol-Myers reversed? Well, Bristol-Myers is a different situation. That was not a representative action. It doesn't follow the statute. Am I wrong this came out of the Supreme Court of California? No, that's correct, Bristol-Myers. Which basically said if you've got one plaintiff there in Sacramento or whatever, you can reach out to the entire nation. And Bristol-Myers said, no, you can't do that for two reasons. One, there's no nationwide service of process provision in the LMRA. And if you then apply traditional jurisdictional jurisprudence, that ruling can't stand. Well, so Bristol-Myers, it was State law claims, eight separate lawsuits that were consolidated, State law claims by over 600 plaintiffs from around the country applying State law. We have a Federal law claim here that applies equally to everybody. The same statute applies to everybody. It's a Federal law. And under the statute, it's dealt with differently. And that's why we're saying it's different here. Are you arguing, essentially endorsing the amici who argued that this is really, whether it's 14th Amendment or 5th Amendment, and that Bristol-Myers really turned on the 14th Amendment because California is a state and they don't have the authority beyond the boundaries of their state to bring in a defendant to face claims from non-California residents? That's correct. I mean, all we need here are connections to the United States. It's a Federal claim. So that makes it kind of a variation on 4K2 service. So we have a provision that allows nationwide service of process under 4K2 when you have a connection to the United States and there's no general jurisdiction in a particular state. But here there is general jurisdiction of Cracker Barrel in Tennessee. So how do we get nationwide service of process? Again, well, we want to be careful here because the statute, the Fair Labor Standards Act as it's been applied for 70, 80 years, you've established jurisdiction with respect to the name plaintiff as it states, and then anybody who's similarly situated can opt in. And that's the way it's always been done. By applying Rule 4. You take it completely out of Rule 4 and say Rule 4 is only to acquire personal jurisdiction over the defendant, and then after that, the similarly situated opt-ins do not have to serve process. They just become a party to the action. That's correct. Every time someone comes in, they don't have to opt in. They do have to opt in. I'm sorry. They don't have to serve. I apologize. They don't have to reserve summons on the defendant, and that would be unnecessary to do so. So basically the name plaintiff who establishes jurisdiction here, and nothing about the statute requires that to be limited to the state. The evidence that's in the record shows this is a nationwide policy coming from corporate and applies to everybody. And so there's no difference between what state you're in, and we're applying the federal law to everybody. And so that's why there's a difference here. And I think Bristol-Myers, it was very specific, and I think the dissent in Canada articulated this very well. But in Bristol-Myers it said, in order for a state court to exercise specific jurisdiction, the suit, and I emphasize the suit, must arise out of or relate to the defendant's contacts with a form. Here the suit started when we had an Arizona plaintiff. We're not looking at claim-specific or party-specific. We're looking at the lawsuit. That couldn't happen in Bristol-Myers because there were multiple lawsuits filed that were then consolidated. And so that's one of the differences between the two. Is it fair to read Rule 4 as Congress imposing limitations on nationwide jurisdiction? I mean, the first provision, 4K1, establishes jurisdiction under minimum contacts, and then you have another provision for nationwide service process. It doesn't seem to apply by its own terms here. So even if under the Fifth Amendment this jurisdiction could have existed, Congress seems to have reined that in by adopting 4K1. Well, I think we want to be careful about the Rules Enabling Act. So the statute, the FLSA's Congress started this. The Rules Enabling Act, 4K cannot be used to undermine the statute. And that's exactly what would happen if we applied 4K to change how the statute's been applied. And I think that's a huge concern. So we would have to read the statute as intended to foster a nationwide collective action as opposed to perhaps statewide collective actions. And nothing about the statute limits it to the state. For 70 to 80 years, it was applied in this way. It didn't matter. If Cranker Bill's policy and the way we're articulating it was, hey, this is how they do things in Arizona, then that's who's similarly situated. We're not doing that. This is a nationwide policy, and we've shown that through the evidence provided. And so that's why the definition of similarly situated is going to be focused on the violations. So when you were responding to Judge Clifton's questions about service, when a potential plaintiff may have signed an arbitration agreement, you said it's going to require a lot of discovery, a lot of upfront work, and under the two-step process in Campbell, that should happen at the second step. But you seem to concede that that's not the case with this issue, that if somebody's claim arises from Cranker Bill's context to Arizona, it's an easier call. Like we could send notice, but then we could easily weed those people out. Well, so, I mean, there was a district court decision from last month saying that that could also be done at the second stage. And I would propose that that should be done at the second stage. But it seems like you were conceding to Judge Clifton that that's a different sort of analysis. It would be pretty straightforward. And so we could do it now. You could do it now. It's possible to do it now, but, again, we'd have to do some discovery or some verification as to what it is. Whether it's a two-step process in Swales or determining what it is, there has to be some upfront investigation. And that's why I think just getting the notices out in a very neutral manner, which the court has already approved, and you're basically reducing the scope of what is evaluated. And normally, you know, there's a 15% to 20% opt-in rate. But when you have these notices that actually say, look, if you're subject to arbitration, it will be less, instead of the 100,000 to 150,000, we're bringing the scope of discovery down. And that's a huge difference in terms of what we're evaluating. And that's why Campbell is important to be able to get to that second stage. Well, how burdensome does the investigation sort of discovery process need to be at the first step? I mean, you have, yes, there's some burden to do that, but the court has to determine on some basis that the people receiving notice are going to be similarly situated. So what should the standard be? How rigorous does that need to be, and how much work do you need to do up front before you can, as the defendants would put it, solicit claims across the country? Well, I believe the Campbell standard is what it is. And I think we've more than met that standard. I don't think anything else has to be done. I do wonder, though, particularly with the 2% figure, which I understand isn't rock solid precise, but if most of the people to whom notices are going to be sent requiring the court to sort out thousands, perhaps, of opt-ins, that's an awful lot of effort to go if you think the success rate is going to be so small. As compared, and this is sort of outside, but I sit here wondering why are they going to all that trouble when you could actually get everybody if you sued in Tennessee? Well, this is the party's choice. And I think the procedure posture in this case was such that, look, we started this, we have two of the three lawyers are in Arizona. We started this with an Arizona group that brought this to us, and it was plaintiff's choice. And when we filed the complaint and Cracker Barrel responded, they did not challenge jurisdiction. In fact, Arizona law was applied. They, under Burger King, they availed themselves to the benefits of being in Arizona to enforce the arbitration agreement with respect to out-of-state opt-ins and then proceeded in that route. And I made it pretty clear, they even said that in their own pleading. We cannot bring a personal jurisdiction challenge because there was an Arizona-named plaintiff. They essentially conceded, indirectly, that BMS does not apply and that they're subject to jurisdiction as long as you have an Arizona-named plaintiff. So the posture of this case was such that, in real time, if we're going step-by-step in terms of what happened over the last three and a half years, we're relying on what they submitted and we're relying on the court's orders to fix the problems that the court identified. And towards the end, getting Bach, the minor who then voided it, to be the Arizona-named plaintiff, our understanding was this is why we have jurisdiction here. So, yes, it is possible to do it there, but in this case, and this is why we proceeded in this route, that's why we're here. So that would seem to undercut your argument under the Rules Enabling Act that this would undermine the statutory purpose. If you can bring the claim in a state in the United States and have your nationwide claim, how is Rule 4K undermining the FLSA? Well, I don't think we can have a nation, well, for example, Cracker Barrel is in 45 states. They're not in five states. If we have nationwide service, theoretically, I could have an Arizona plaintiff suing Cracker Barrel in, I think, Hawaii. I don't think Cracker Barrel is in Hawaii. I don't think so. I welcome these. And so that nationwide service would allow for that. I think an employment case may be different than other cases that may allow for nationwide service. You have to have employees where they are, and I think that's where the statute addresses that issue. And once you meet the requirements of the statute in the Fair Labor Standards Act and you serve process under 4K, then you're done. Thank you. Thank you. Thank you. Mr. Coleman, I'm going to give you a couple more minutes because we took Mr. Sudo for time by about five minutes. We'll give you five minutes on rebuttal. Thank you, Your Honor. I want to start by trying to put some context on a question that was asked by Judge Clifton. The relevant number would be approximately 2,300 if you focused only on Arizona. So 2,300 out of over 142,000. And if you then looked at that 2,300 and you calculated the number of adult signers of arbitration agreements, you'd be down to about 300. So there's only about 300 and change that worked in Arizona and either did not sign an arbitration agreement or may have signed one as a minor and then timely repudiated. So what's a plaintiff in a situation like this to do, assuming the panel agrees with your jurisdictional approach? Do they file separate suits in 45 states with in-state plaintiffs who did not sign arbitration agreements and then ask the multi-district litigation panel to pull them together? That would be one option. Any employee that worked for Kracovar, let's say in South Carolina, South Carolina would have proper jurisdiction over that employee's claim. The other option would be, in this case, to go to Tennessee and sue in Tennessee and this entire issue never comes up because Tennessee, the federal courts in Tennessee, would have general personal jurisdiction over Kracovar. And that's essentially what the four circuits who have applied Bristol-Myers-Squibb to FLSA collective actions, that's what they have noted in their decisions. And that brings me to another point. The FLSA is very, very unique, and the collective action is nothing like a Rule 23 class action. There is no class. The statutory language is very, very clear. Two things have to happen for a collective action. One is there has to be determination as to who is similarly situated, and then number two, an opt-in plaintiff must file a consent to opt-in. At that point, they become a party plaintiff. There's no class. There's no, you know, it's a completely different concept than a class action, and that's why personal jurisdiction over the defendant is necessary on a plaintiff-by-plaintiff basis. And that's essentially what the four circuits who have applied it to collective actions have said. And they liken an FLSA collective action to the mass tort claims that were at issue in the Bristol-Myers case that went to the Supreme Court. The Cracker Barrel asserts that if notice is permitted to go out to employees outside the state or it's permitted to be mailed to employees that signed arbitration agreements that the court has already reviewed and found to be enforceable, and that means they signed them as an adult, that amounts to pure solicitation of claims. They cannot join the lawsuit. They cannot be similarly situated to a plaintiff who's not bound to arbitrate. And in the case of jurisdiction, somebody who worked for Cracker Barrel in Virginia cannot be similarly situated to somebody who worked for Cracker Barrel in Arizona. Well, they could be. I mean, they are if the lawsuit is filed in Tennessee. The only thing you have to distinguish is the argument that they couldn't sue themselves directly in Arizona. But similarly situated isn't so precisely defined that mostly what we're looking at is employment. Are they employees? Are they employees of the same kind? Are they subject to the TIP credit and so forth? I'm not sure that defining federal court jurisdictional reach really changes whether employees are similarly situated. If they sued in Tennessee, you wouldn't dispute that, would you? Yeah, it would not be an issue in Tennessee. Also, there was a question. There is no anchor, and I think the question was from Judge Patey. The court below did view the Arizona plaintiff as the anchor that somehow sort of magically corrected the lack of specific personal jurisdiction over Cracker Barrel. And we think that's reversible error. Your friend on the other side has argued that Cracker Barrel waived the jurisdictional issue in the way it litigated the case in the district court. Can you respond to that? So the original complaint had four named plaintiffs. One had worked in Arizona, and three were out of state. Cracker Barrel's first pleading was a motion petition, if you will, under the Federal Arbitration Act, asking the court to examine the arbitration agreement, find it enforceable, compel those four to arbitration, and dismiss the complaint. That was granted. That was the court's November 12, 2021 order. It's ER 45. So that complaint was completely wiped out. And opposing counsel is correct. Cracker Barrel did not raise the issue at that time in that process. Leave was granted by the court, and a first amended complaint was filed. Completely new set of plaintiffs. No overlap whatsoever. The original four were gone, and three new. And the three new ones, not a single one of them had worked for Cracker Barrel in Arizona. And Cracker Barrel filed a 12B2 motion, and the court granted that motion and dismissed the first amended complaint, but granted leave to amend again. So would your position be that Cracker Barrel waived the jurisdictional issue with respect to the first complaint and those specific plaintiffs? But now that complaint has been dismissed, and so we're dealing with a new set of plaintiffs. At most, that would be the case. If there was waiver, it was only with regard to those three, who were dismissed for other reasons anyway. But there's no way to say, well, now you've waived as to 142,000-plus people that the court is going to authorize notice to go to. So that first original complaint was completely superseded by the filing of the first amended complaint, which in turn was voided and superseded by the filing of the second amended complaint. And so, yes, our position is there can be no waiver, but if there is waiver, it can't be extended beyond the three where Cracker Barrel could have challenged personal jurisdiction at that point, but chose to petition to compel arbitration under the FAA. Okay. Well, you're over time, so if you want to just conclude, please. All right. Thank you. Thank you. Thank you, counsel, for your arguments this morning. They were very helpful. This case is submitted.
judges: HAWKINS, CLIFTON, BADE